**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                      ) | Case No. 4:22-cr-116 |
| ) | |
| ) | |
| KERRY MILLEDGE             ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE (DOC. 36)**

**TO THE HONORABLE COURT:**

**COMES NOW**, the United States of America, through David H. Estes, United States Attorney for the Southern District of Georgia, and the undersigned Assistant United States Attorney, and before this Honorable Court, opposes Defendant's Motion to Suppress Physical Evidence (Doc. 36). For the reasons set forth below, Defendant's Motion to Suppress Physical Evidence (hereinafter "Motion") should be denied.

**INTRODUCTION**

Defendant Kerry Milledge (hereinafter "Defendant") argues in his Motion that there were no traffic infractions, or any other illegal behavior observed.[1] *See* Doc.

---

[1] Local Rule 12.1 requires that "[e]very factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion." L.Cr.R. 12.1. The Rule expressly requires supporting affidavits to be submitted "[w]here allegations of fact are relied upon that are not supported by the existing record." *Id*. Defendant has failed to submit any affidavit to support the factual assertions in his motion nor does Defendant cite to any supporting documentations for his claims. *See* Doc. 36.

36. Further, Defendant alleges that the vehicle was then illegally searched. *Id.* Defendant asks this Court to suppress the evidence from a vehicle but does not address the threshold issue of standing.

Even if Defendant has standing to challenge the search, the search was justified based on three separate doctrines. First, police had probable cause to search the Ford Explorer based on the automobile exception. Second, the plain view doctrine justified a search of the Ford Explorer containing drugs and firearms. Third, the drugs and firearms in the Ford Explorer would have inevitably been discovered in an inventory search. Defendant's Motion, therefore, is properly denied.

## STATEMENT OF PERTINENT FACTS

On March 1, 2022, Garden City Police Department ("GCPD") and Chatham County Sheriff's Office ("CCSO") were stationed around the Pines Apartments in Chatham County with the operational goal of traffic enforcement and to intercept vehicles entering and exiting the complex to prevent further crimes from occurring as a result of a shooting that occurred the previous night. Ex. 1. GCPD observed a Ford Explorer with extremely dark, and what appeared to be illegal, tinted windows exit the apartment complex. *Id.* It was later determined that the tint was in fact illegal. Ex. 3. The vehicle tag was run and returned to a rental car. Ex. 1.



Ex. 3.

As the Ford Explorer exited, GCPD observed that it ran the stop sign at Oglesby Avenue and Highway 21. Ex. 1. After the initial observation of the tinted windows and running the first stop sign, the Ford Explorer ran multiple stop signs and travelled at a high rate of speed. *Id.*

> I was stationed across from the apartment complex at the Garden City Gymnasium, where I had a clear veiw of the neighborhood. During this time, I observed a newer model Ford Explorer, with extremely dark and appeared to be illegal tinted windows (later confirmed to be 14%), exit the apartment complex. The vehicle had recently appeared on our Flock Camera system at Priscilla D Thomas Way previous to it`s exit and the vehicle tag was a Florida tag (CIBB98), which came back to a rental vehicle. The vehicle was observed by Sgt. Rodriguez turning left onto Cooper Lane until exiting onto Highway 21 at Oglesby Avenue. Be advised, Sgt. Rodriguez clearly observed the vehicle run the stop sign at Oglesby Avenue and Highway 21. Once the vehicle was on Highway 21, it immediately took the next right down Rommel Avenue, continuing through multiple stop signs, without stopping, at a high rate of speed. Be advised, this area is a residential area and the speed limit is only 30 MPH.

Ex. 1.

When the Ford Explorer stopped at Rommel Avenue and Main Street, CCSO initiated a traffic stop. Ex. 2. The Ford Explorer ran through a red light, refusing to

stop, and continued travelling at a high rate of speed. *Id*. A vehicle pursuit ensued. *Id*.

The Ford Explorer eventually hit the curb of a parking lot and damaged the front right fender and tire. Ex. 2. Once stopped, both the driver and the passenger exited the Ford Explorer and began running in different directions. *Id*.

The driver was identified as the Defendant. Ex. 1. The Defendant had a black bag when he ran from the Ford Explorer. *Id*. He ran and hid in a wooded area until he was apprehended by law enforcement and searched. *Id*. On the Defendant's person was U.S. currency (totaling over $1000 in small denominations) and a clear baggie with a white pill inside, a set of personal keys and a debit card. *Id*. The black bag was never recovered. *Id*.

As it relates to the Ford Explorer, on the rear floorboard 3 large clear plastic bags containing marijuana were seen in plain view, as well as a small bag of marijuana in the front center console. Ex. 2. A firearm was seen on the front passenger side floorboard next to a book bag. *Id*.

> large amount of U.S. Currency was located, totalling the amount of $920.00. On the rear floor board, behind the passenger seat, 3 large clear plastic bags, containing green leafy substance (marijuana) was seen in plain view. A [illegible]

Ex. 2.

The Ford Explorer was searched by CCSO and numerous pounds of marijuana, two firearms, U.S. currency, and multiple cellular phones were located inside. Ex 2. Then, the Ford Explorer was towed from the scene. *Id*.

## ARGUMENT

In his motion, Defendant argues that this Court should suppress the evidence seized from the Ford Explorer because law enforcement observed nothing suspicious about the vehicle and no traffic infractions were observed, and the search followed. *See* Doc. 36. This argument is without merit. The reports of the officers contradict the allegations in the Motion. *See* Exs. 1-2. Further, Defendant makes these factual assertions with no support of any citation or attached affidavit (*see* S.D. Ga. L. Cr. R. 12.1).

According to law enforcement officers involved in the incident, Defendant fled from a Ford Explorer when CCSO initiated a traffic stop for several traffic violations. First, the officers observed extremely dark window tint that appeared to be illegal, and the Ford Explorer ran a stop sign. Then, the Ford Explorer refused to stop, and officers had to pursue the Defendant in the Ford Explorer at high speeds. Defendant was apprehended in a wooded area, away from the Ford Explorer. In so doing, he abandoned whatever reasonable expectation of privacy he maintained in the Ford Explorer's contents, including the firearms and drugs. The facts support that the traffic stop was legal, and the Defendant abandoned the vehicle, as such Defendant's claim should be rejected.

Further, Defendant's Motion (Doc. 36) does not merit an evidentiary hearing, must less any relief, since he fails to meet the fundamental pleading standard established by the Eleventh Circuit. *See United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) (requiring a motion to suppress to "be sufficiently definite,

specific, detailed, and nonconjectural" and that a "court need not act upon general or conclusory allegations"). Defendant's Motion falls well short of this standard, and he does not even address the threshold issue of standing. *Cooper*, 203 F.3d at 1284 (finding defendants not entitled to evidentiary hearing where their "claim to standing [was] founded only on their ultimate conclusion that the hotel room was 'theirs,' rather than on facts demonstrating that conclusion to be true"). Compounding his failure to address standing, Defendant offers no evidentiary support for factual assertions in his Motion. *See* S.D. Ga. L. Cr. R. 12.1 ("Where allegations of fact are relied upon that are not supported by the existing record, supporting affidavits shall be submitted.").

Nonetheless, should the Court address his effort to suppress the drugs and firearms in the Ford Explorer, his motion fails for several reasons apart from standing. Police had probable cause to search the Ford Explorer. Even if they lacked probable cause to search the vehicle, the plain view doctrine supports the search. Lastly, suppression of the evidence is inappropriate based on inevitable discovery.

**A.   *Defendant abandoned the Ford Explorer and therefore lacks standing to complain of its search.***

To have standing to object to a search or seizure pursuant to Federal Rule of Criminal Procedure 41, Defendant must demonstrate that he had a reasonable expectation of privacy. *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973). "Further, it is settled law that one has no standing to complain of a search or seizure of property he has voluntarily abandoned." *Id*. (citations omitted). Abandonment is assessed objectively "based on the prior possessor's intent, as discerned from

statements, acts, and other facts." *United States v. Sparks*, 806 F.3d 1323, 1342 (11th Cir. 2015); *accord United States v. Pirolli*, 673 F.2d 1200, 1204 (11th Cir. 1982), *cert. denied*, 459 U.S. 871 (1982). The Eleventh Circuit considers "[a]ll relevant circumstances existing at the time of the alleged abandonment." *Colbert*, 474 F.2d at 176 (citation omitted). The "critical inquiry is 'whether the person prejudiced by the search . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.'" *United States v. McKennon*, 814 F.2d 1539, 1546 (11th Cir. 1987) (emphasis omitted) (quoting *Pirolli*, 673 F.2d at 1204). Police pursuit does not render abandonment involuntary. *United States v. Jefferson*, 451 F. App'x 833, 834 (11th Cir. 2011). While Defendant bears the burden of proving a legitimate expectation of privacy in the areas searched, the burden of proving abandonment is on the Government. *United States v. Ramos*, 12 F.3d 1019, 1022–23 (11th Cir. 1994) (citations omitted).

The Eleventh Circuit and other court in this circuit, including this Court, have routinely held that abandonment applies when a defendant flees from a vehicle while being pursued by police. For instance, in *United States v. Falsey*, the Eleventh Circuit found that defendant abandoned his BMW when, "believing that he was being pursued by the police, sped into the parking lot of a business park and then sprinted into the woods, leaving his car unlocked with the key still inside of it." 566 F. App'x 864, 867 (11th Cir. 2014). The Court reasoned that the defendant's "only conceivable purpose for doing so" was "to disassociate himself from the vehicle and the narcotics

that were in it." *Id.*; *see also United States v. Jefferson*, 451 F. App'x 833, 834 (11th Cir. 2011) (affirming district court's finding that vehicle was abandoned where defendant struggled with a police officer during a traffic stop and then fled on foot); *United States v. Edwards*, 441 F.2d 749, 751–53 (5th Cir. 1971) (finding abandonment where defendant fled on foot from police, leaving vehicle running on a public highway).

Similarly, in *United States v. Gaines*, the defendant fled from police after being pulled over for a traffic violation. No. CR410-260, 2011 WL 744658, at *1 (S.D. Ga. Jan. 19, 2011), *report and recommendation adopted,* No. CR410-260, 2011 WL 740728 (S.D. Ga. Feb. 23, 2011). This Court held that the defendant "forfeited any reasonable expectation of privacy with respect to the vehicle and its contents by fleeing from the police officers and abandoning his car." *Id.* at *3 (collecting cases). *See also United States v. Elkins*, No. 116CR002406ELRJFK, 2017 WL 2457494, at *5–6 (N.D. Ga. Apr. 13, 2017) (finding defendant who fled vehicle on foot and left door open and car running abandoned any reasonable expectation of privacy in the vehicle); *United States v. Garner*, No. 1:15-CR-0316-LMM-AJB, 2016 WL 2344852, at *1 (N.D. Ga. May 2, 2016) (finding defendant's act of disregarding police command and running away from car meant that "he voluntarily abandoned any privacy interest in the Honda" and he had "no standing to challenge the search of the Honda").

Here, the facts support a finding of abandonment, *i.e.*, that Defendant relinquished whatever privacy interest he had in the Ford Explorer. First, when the Ford Explorer came to a stop after a vehicle pursuit by law enforcement, Defendant

fled on foot away from the Ford Explorer. Ex. 1. Second, the Defendant hid in a wooden area and did not attempt to return to the Ford Explorer. *Id.* The keys on found on the Defendant were personal keys, and not the car keys to the Ford Explorer. Ex. 9. The Defendant did not have the car keys when he abandoned the Ford Explorer. These acts reflect his intent to disassociate himself from the vehicle and the incriminating contents in it. *See Falsey*, 566 F. App'x at 867 ("The driver was just like the bank robber who having a gun, finds himself pursued, and in his hope of escaping detection throws the gun into a yard where, if it is not picked up he might retrieve it later." (internal marks and citation omitted)). "Such conduct is transparently an abandonment of the tight grip of ownership and reliance solely on the feeble hope of re-acquisition." *United States v. Williams*, 569 F.2d 823, 826 (5th Cir. 1978).

As Defendant abandoned the Ford Explorer, he lacks standing to challenge his search, and his Motion (Doc. 36) is properly denied.

### B. *Police had probable cause to conduct a warrantless search of the Ford Explorer.*

Even if Defendant has standing, the search was justified based on the automobile exception. Automobiles may be searched without a warrant if two requirements are met. *United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006); *see also United v. Ross*, 456 U.S. 798, 809 (1982) (citing *Carroll v. United States*, 267 U.S. 132, 153 (1925)). First, the vehicle must be readily mobile, *i.e.*, operational. *Tamari*, 454 F.3d at 1261. This requirement is met if the automobile "reasonably appear[s] to be capable of functioning." *United States v. Lindsey*, 482 F.3d 1285, 1293

n.6 (11th Cir. 2007). Here, the Ford Explorer was readily mobile, as law enforcement followed it on the day it was searched. Ex. 1. Though it was later determined to be disabled by the damage to the tire and ultimately towed, at the time of the search the Ford Explorer *appeared* to be capable of functioning. Thus, the first requirement to the automobile exception is met.

The Ford Explorer was determined to be disabled upon further investigation; however, the automobile exception still applies. *See California v. Carney*, 471 U.S. 386, 391 (1985)(Even in cases where an automobile is not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of vehicular exception.) The lesser expectation of privacy resulting from its use as a readily mobile vehicle justifies the application of a vehicular exception, not that it was immediately mobile at the time of the search. *Id.* And the vehicle was not mobile at the time of the search solely by virtue of the Defendant's complete disregard of driving regulations, thus he is not entitled to heightened privacy interest. *See United States v. Fields,* 456 F.3d. 519, 524 (5th Cir. 2006).

Second, for the automobile exception to apply, police must have probable cause at the time they search the vehicle. *United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003). "Probable cause, in turn, exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *Tamari*, 454 F.3d at 1264 (citation and internal quotation marks omitted). "A court may aggregate multiple officers' knowledge and consider probable cause collectively when the officers 'maintained at least a minimal level of

communication during their investigation.'" *United States v. Sullivan*, No. 16-17636, 2017 WL 6003332, at *3 (11th Cir. Dec. 5, 2017) (quoting *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985)).

Here, police had ample probable cause to search the Ford Explorer. Law enforcement knew that when they attempted a traffic stop on the Ford Explorer, Defendant fled from the car, "suggesting that there were illegal materials in the vehicle he did not want the police to find." *United States v. Williams*, No. 13-CR-00764-WHO-1, 2015 WL 3863860, at *4 (N.D. Cal. June 22, 2015); *see also Harris v. United States*, 577 F. App'x 70, 72 (2d Cir. 2014) ("The fact that Harris eventually abandoned his car and discarded items that could link him to the vehicle, notably his car keys, reinforced the probability that the vehicle contained incriminating evidence."); *United States v. Gamory*, 2009 WL 855948, at *16 (N.D. Ga. Mar. 30, 2009) (noting that defendant running away from agents after he parked his vehicle and tossing the keys to the vehicle aside was among totality of circumstances providing probable cause to search vehicle).

Police also knew that Defendant had clear baggie with a white pill and cash in smaller denominations on his person, was seen running with a black bag that he ultimately discarded, and multiple cell phones were discarded as part of the flight—all hallmarks of drug trafficking. *See Williams*, 2015 WL 3863860, at *4 ("Given that he was found with marijuana on his person immediately after exiting the vehicle, and attempted to prevent the police from opening the vehicle, it was reasonable to think that there was contraband, or some evidence of a crime, in the vehicle."); *United*

*States v. Goodwin*, 518 F. App'x 890, 893 (11th Cir. 2013) (finding that defendant's possession of $1,026 in his pockets supported jury's finding that defendant possessed the drugs with the intent to distribute); *United States v. Taylor*, 471 F. App'x 499, 516 (6th Cir. 2012) (stating that possession of multiple cell phones is a "telltale sign of drug dealing" and recognizing that it is "common practice" for drug dealers to use multiple cell phones).

Moreover, even the passenger's suspicious behavior of fleeing away from the Ford Explorer further heightened officers' suspicions regarding the vehicle. *See United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005) ("When both occupants bolted and one was discovered to have an arrest warrant outstanding against him, the police had probable cause to believe that a search of the car would turn up contraband or evidence of crime.").

These facts and circumstances would lead a reasonably prudent person to believe that the Ford Explorer contained contraband, *i.e.*, a firearm or narcotics unlawfully possessed. Accordingly, since the requirements for the automobile exception existed to search the Ford Explorer, Defendant's Motion is without merit.

### C. *Even if police lacked probable cause to search the Ford Explorer, the search was justified by the plain view doctrine.*

The Supreme Court has recognized that "the seizure of an object in plain view does not involve an intrusion on privacy." *Horton v. California*, 496 U.S. 128, 141 (1990). The Eleventh Circuit has articulated two elements of the plain view doctrine: "(1) the officer is lawfully in the place from which the object can be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating

character of the item is immediately apparent." *United States v. Smith*, 459 F.3d 1276, 1290–91 (11th Cir. 2006) (citing *Horton*, 496 U.S. at 136–37). "The plain view doctrine allows police officers to seize any contraband in plain view if the officers have a right of access to the place where the contraband is located." *United States v. Rodgers,* 924 F.2d 219, 221 (11th Cir.1991). "The warrantless seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

Here, as to the first element, the officers were lawfully in the parking lot or that they had a lawful right to view the bags visible in the Ford Explorer. *See United States v. Sanchez*, 612 F.3d 1, 5 (1st Cir. 2010) (observing that it "is beyond serious question" that first element of plain view doctrine satisfied where "officers were in a parking lot where they had a right to be"). "The general public could peer into the interior of [the Ford Explorer] automobile from any number of angles; there is no reason [a police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen." *Texas v. Brown*, 460 U.S. 730, 740 (1983). The first requirement is satisfied.

"For an item's incriminating character to be immediately apparent, police must have probable cause to believe the object in plain view is contraband or evidence of a crime." *United States v. King*, 634 F. App'x 287, 290 (11th Cir. 2015) (citations omitted). Probable cause, in turn, "merely requires that the facts available to the

officer would warrant a man of reasonable caution in the belief . . . that certain items may be contraband . . .; it does not demand any showing that such a belief be correct or more likely true than false." *United States v. Wright*, 324 F. App'x 800, 804 (11th Cir. 2009).

In this case, Defendant ran from the Ford Explorer. There was a bag of marijuana visible in the open center console and multiple large clear bags of marijuana on the back passenger floorboard.



Ex. 6.



Ex. 7.



Ex. 8.

When CCSO approached the Ford Explorer, several events had already transpired: Defendant had fled, running with a black bag that was never recovered, was hiding from law enforcement and then apprehended and searched and found to be in possession of a pill and a large amount of cash; *see Ornelas v. United States,* 517 U.S. 690, 696 (1996) ("The principal components of a determination of . . . probable cause [are] the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause."). Furthermore, there was marijuana in plain view in the Ford Explorer. *See* Exs. 6-8.

Thus, in light of the events leading up to observations of the clear plastic baggies and the bag's contents in plain view, the incriminating nature of the contents was immediately apparent. Evidence obtained from the Ford Explorer are not subject to suppression. Law enforcement's discovery of the marijuana provided ample probable cause to search the remainder of the vehicle.

### D. Since an inventory search of the Ford Explorer would have inevitably occurred, the search was justified by the inevitable discovery doctrine.

Even if Defendant overcomes standing, the automobile exception, and the plain view doctrine, the drugs and firearms discovered in the Ford Explorer are still admissible based on inevitable discovery. "Subtract the illegal search from the factual picture in this case and nothing of substance would have changed." *United States v. Johnson*, 777 F.3d 1270, 1277 (11th Cir. 2015) (internal marks and citation omitted).

Under the doctrine of inevitable discovery, the government may introduce evidence that was obtained by an illegal search if the government can establish a "reasonable probability that the evidence in question would have been discovered by lawful means." *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004). The government must also establish that "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *Id.* (quotation omitted). "Active pursuit" does not require that police have already planned the particular search that would obtain the evidence. *Id.*; *Johnson*, 777 F.3d at 1274–75 ("[T]he purpose of the requirement of active pursuit is to exclude evidence that was not being sought in any fashion."). Instead, the government need only establish that law enforcement would have discovered the evidence "by virtue of ordinary investigations of evidence or leads already in their possession." *Jefferson*, 382 F.3d at 1296 (quotation omitted).

The drugs and firearms in the Ford Explorer would have ultimately been found

by a lawful inventory search. As set forth by the Supreme Court, it is unnecessary for an officer to obtain a warrant to conduct a routine inventory search, which serves to protect the owner's property while it is in police custody, protect the police against claims of liability, and protect the police from potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 370 (1976). An inventory search is proper when the officers had the authority to impound the vehicle, and the officers followed the procedures outlined in a departmental policy. *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991).

Here, officers had authority to impound the vehicle. Defendant was apprehended based on fleeing from a lawful traffic stop, and his arrest was further supported by the pill and currency totaling over $1000 in cash he had in his pockets. Ex. 1. The passenger nor the Defendant, who was the driver, were the Ford Explorer's owners as the Ford Explorer was a rental car rented to Candance Washington, who was not present at the scene. Ex. 2. The Ford Explorer was towed due to excessive tire damage and since the lawful owner was not present. Ex. 4.

According to CCSO policy, officers have authority to impound a vehicle following arrest. *See* Ex. 5, Chatham County Sheriff's Office Vehicle Impound and Inventory Procedure, pgs. 1-2 ("To establish a uniform procedure to be followed when privately owned vehicles are to be towed…or by impoundment following custodial arrest by members of this Department…All Deputies who make…a custodial arrest upon the driver…of a motor vehicle will adhere to the following procedure…") A Deputy will perform an inventory of the vehicle and record the items inventoried. *Id.*

at 2.

Thus, not only would the Ford Explorer have been searched, but the firearm and drugs would have been discovered during such search. *See United States v. Alexis*, 688 F. App'x 656, 657 (11th Cir. 2017) (upholding finding that the towing and subsequent inventory search leading to the discovery of the gun was inevitable); *United States v. Johnson*, 777 F.3d 1270, 1274–76 (11th Cir. 2015) (applying exception to gun discovered during search of defendant's truck after his arrest, even though the search had not been planned until after the arrest, because the officer "would eventually have had to impound the truck because there was no one to whom he could have released it" and in the course of doing so he would have searched the vehicle "and he would have discovered the shotgun"); *Gaines*, 2011 WL 744658, at *4 (finding inevitable discovery related to inventory search would uphold the search of abandoned vehicle).

Since the inevitable discovery doctrine applies, Defendant's Motion is properly denied. Any other ruling "would put the government in a worse position than had the" allegedly unlawful search not occurred, which is "an outcome that the inevitable discovery exception was fashioned to avoid." *Johnson*, 777 F.3d at 1275.

## CONCLUSION

For the reasons stated above, the Government respectfully submits that the Defendant's Motion to Suppress Physical Evidence (Doc. 36) should be DENIED by this Honorable Court.

This 2nd day of November 2022.

                                        Respectfully submitted,

                                        DAVID H. ESTES
                                        UNITED STATES ATTORNEY

| | |
|---|---|
| 22 Barnard Street, Suite 300 | *s/ Marcela C. Mateo* |
| Savannah, Georgia 31401 | Marcela C. Mateo |
| Telephone: (912) 652-4422 | Assistant United States Attorney |
| Facsimile: (912) 652-4991 | Georgia Bar No. 397722 |
| E-mail: marcela.mateo@usdoj.gov | |

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

Submitted this 2nd day of November 2022.

DAVID H. ESTES
UNITED STATES ATTORNEY

22 Barnard Street, Suite 300
Savannah, Georgia 31401
Telephone: (912) 652-4422
Facsimile: (912) 652-4991
E-mail: marcela.mateo@usdoj.gov

*s/ Marcela C. Mateo*
Marcela C. Mateo
Assistant United States Attorney
Georgia Bar No. 397722